UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KARRIS LINZY,

                              Plaintiff,

v.

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.

Case # 16-CV-6121-FPG

DECISION AND ORDER

Karris Linzy ("Linzy" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On January 31, 2013, Linzy applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 171-83. She alleged that she had been disabled since April 1, 2011 due to sarcoidosis and obesity. Tr. 196. On October 6, 2014, Linzy and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Roseanne M. Dummer ("the ALJ"). Tr. 34-58. On October 14, 2014, the ALJ issued a decision finding that

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

Linzy was not disabled within the meaning of the Act. Tr. 9-24. On January 11, 2016, the Appeals Council denied Linzy's request for review. Tr. 1-3. Thereafter, Linzy commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Linzy's claim for benefits under the process described above. At step one, the ALJ found that Linzy had not engaged in substantial gainful activity since the alleged onset date. Tr. 11. At step two, the ALJ found that Linzy has the following severe impairments: morbid obesity, stable sarcoidosis, and obstructive sleep apnea. Tr. 11-12. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 13.

Next, the ALJ determined that Linzy retained the RFC to perform light work[3] with additional limitations. Tr. 13-21. Specifically the ALJ found that Linzy can lift and carry about 20 pounds occasionally and 10 pounds frequently; can sit for about six hours and stand and walk for about two hours in an eight hour workday; must avoid concentrated exposure to pulmonary irritants and extreme heat and cold; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid work hazards, *i.e.*, dangerous moving machinery, unprotected heights, and slippery wet surfaces; and can perform unskilled work involving simple, routine, and repetitive tasks. Tr. 13.

At step four, the ALJ found that this RFC prevents Linzy from performing her past relevant work as a cashier. Tr. 22. At step five, the ALJ relied on the VE's testimony to determine that Linzy can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

testified that Linzy could work as a ticket seller, storage facility clerk, office helper, telephone order clerk, document preparer, and assembler. Tr. 23. Accordingly, the ALJ concluded that Linzy was not "disabled" under the Act. Tr. 24.

## II. Analysis

Linzy argues that remand is required because (1) the RFC assessment is not supported by substantial evidence; (2) the ALJ erred at step two when she found Linzy's headaches to be a nonsevere impairment; and (3) the credibility assessment is not supported by substantial evidence because the ALJ improperly considered Linzy's failure to comply with treatment. ECF No. 11-1, at 13-20; ECF No. 15, at 1-3. These arguments will be addressed in turn below.

### 1. RFC Assessment

Linzy argues that the RFC assessment is not supported by substantial evidence because it does not account for her severe impairment of obstructive sleep apnea. ECF No. 11-1, at 13-15. Specifically, Linzy asserts that obstructive sleep apnea would require her to take unscheduled breaks during the workday. *Id.* In support of this argument, Linzy relies on the opinion of her treating physician Sikandar Imran, M.D. ("Dr. Imran") that she would "sometimes need to take unscheduled breaks" during an eight hour workday. Tr. 550. Linzy contends that the ALJ erred when she afforded "some weight" to this opinion without explaining why that specific limitation was rejected. ECF No. 11-1, at 14-15; ECF No. 15, at 1-2.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

In general, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Accordingly, when an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently")).

Here, Dr. Imran opined that Linzy required several work-related limitations, including that she would "sometimes need to take unscheduled breaks" during an eight hour workday. Tr.

550.  The ALJ summarized Dr. Imran's opinion in her decision and afforded it "some weight" because it was consistent with the objective evidence.  Tr. 21; *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (an ALJ will give more weight to a medical opinion supported by relevant evidence and a thorough explanation), 404.1527(c)(4), 416.927(c)(4) (an ALJ will give more weight to a medical opinion that is consistent with the record as a whole).  Although Linzy is correct that the ALJ did not explicitly explain why she rejected Dr. Imran's limitation as to unscheduled breaks, she adequately discussed this issue in a different portion of her decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

The ALJ's step five discussion illuminates her conclusion that Linzy did not require unscheduled breaks.  Tr. 23.  At step five, the ALJ explained that the VE testified that employers customarily tolerate an employee who is off task 10% of the work day (*i.e.* about six minutes an hour or 48 minutes in one work day) and absent one day per month.  *Id.* (referring to Tr. 57). The ALJ concluded that "[n]o evidence indicates that [Linzy] would require more than the customary time off task or absences for the jobs [the VE identified]."  Tr. 23.  The Court agrees. Although Dr. Imran opined that Linzy would "sometimes need to take unscheduled breaks," he declined to complete the follow up questions that asked how often Linzy would need breaks and how long each break would last.  Tr. 550.  Thus, it is not unreasonable to conclude that Linzy would require only the customary time off task.  Although Linzy testified that she needed to nap during the day, the ALJ found her "less than fully credible," as discussed in more detail later in this decision.

7

Moreover, the ALJ specifically discussed Linzy's obstructive sleep apnea in her RFC analysis and noted that Linzy did not tolerate the fitting process for a special sleep mask. Tr. 19. Although Linzy requested to reschedule the fitting for a later date, she never followed up. *Id.* (citing Tr. 377); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (an ALJ is entitled to consider treatment the claimant has or has not received when he or she evaluates the claimant's symptoms). The ALJ noted that only conservative treatment was recommended and that the evidence generally demonstrated no "overt concern" over Linzy's sleep apnea. Tr. 19.

Based on Dr. Imran's opinion, the ALJ's discussion as to unscheduled breaks and Linzy's sleep apnea, and the credibility of Linzy's testimony, the Court finds that the RFC assessment is supported by substantial evidence and did not need to include a limitation as to unscheduled breaks. The ALJ was entitled weigh all the evidence described above and to resolve any conflicts in the record when creating the RFC assessment. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

### 2. Step Two

Linzy also argues that the ALJ erred at step two when she found her headaches to be a nonsevere impairment and that it is unclear whether the ALJ considered her headaches when she created the RFC assessment. ECF No. 11-1, at 15-16; ECF No. 15, at 3.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). It is the claimant's burden to present evidence that establishes the severity of his or her impairment. 20 C.F.R. §§ 404.1512(a), 416.912(a). The claimant must demonstrate "that the impairment has caused functional limitations that precluded him [or her] from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) and *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on the individual's ability to work. *Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985). The ALJ is required to consider nonsevere impairments when assessing the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your [RFC]."). Remand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining his or her RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("[A]fter finding that [the claimant]'s mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere, . . . the ALJ determined [the claimant]'s RFC without accounting for any of the limitations arising from her mental impairment[.] Thus, the ALJ committed legal error.") (quotation marks and alterations omitted).

Here, the ALJ discussed Linzy's headaches at step two of the disability analysis and concluded that they constitute a nonsevere impairment. Tr. 11-12. Specifically, the ALJ reasoned that although Linzy "frequently sought emergency care with complaints of headaches, neurological examinations were normal." Tr. 11 (citing Tr. 339). She also noted that a "[h]ead CT scan only indicated a sinus mucus retention cyst in August 2013. The sinus cyst and other episodes of rhinitis were treated conservatively with medication and resolved." *Id.* (citing Tr. 797).

Regardless of whether the ALJ properly analyzed Linzy's headaches at step two, she found that Linzy had other severe impairments and thus continued with the disability analysis. Tr. 11-12. "An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his or] her RFC determination." *Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015). As will be explained below, the ALJ considered Linzy's headaches in determining her RFC and thus any error in deeming headaches a nonsevere impairment at step two was harmless. *See Vaughn v. Colvin*, 116 F. Supp. 3d 97, 103 (N.D.N.Y. 2015) ("[B]ecause the [ALJ] considered [plaintiff]'s cerebral palsy in determining his RFC . . . the failure to deem the cerebral palsy severe at step two was harmless.").

The ALJ specifically noted at the end of her step two analysis that she "considered [Linzy]'s severe and nonsevere impairments in the [RFC]" (Tr. 12), and the RFC analysis mentions Linzy's headaches numerous times. The ALJ noted, for example, that Linzy testified that she has migraines 10 to 12 times per month that last for four to eight hours and that she must be in a dark room with no sound or light when they occur. Tr. 14. She also testified that she has

not participated in headache studies or kept a "headache journal," and that her mediations "semi work" and reduced her headaches to six times per month. *Id.* The ALJ also noted at least a dozen times when Linzy sought emergency care complaining of headaches. Tr. 15-16, 18, 20 (citing Tr. 315, 319, 339, 342, 349, 429, 629, 684, 741, 780, 797-98).

The ALJ reasoned that although Linzy complained of headaches, "there is no evidence of persistent pathology. Acute sinus disease and sinus cysts were treated with medication and [she was] released home." Tr. 20 (citing Tr. 335-37). She noted that "[n]eurological examinations were negative and further studies for evaluation of reported headaches were not warranted[.] There was no evidence of overt concern regarding headaches and [Linzy] was treated with pain medication only; she testified that she was not instructed to keep a headache journal. Other emergency room records indicated concern regarding possible drug seeking behavior." *Id.* (citing Tr. 339, 764).

Linzy contends that the RFC assessment should have contained limitations relating to unscheduled breaks and absences to properly account for her headaches. ECF No. 11-1, at 16; ECF No. 15, at 3. For the reasons explained previously, however, the Court finds that the ALJ properly considered whether Linzy required unscheduled breaks and that the RFC assessment did not need to include such a limitation. As to absences, the ALJ specifically noted that there was no evidence that Linzy would require more absences then employers customarily tolerate. Tr. 23. Importantly, Dr. Imran, who provided the only physical RFC assessment of record, did not opine that Linzy was likely to be absent from work as a result of her impairments or treatment. Tr. 551. Dr. Imran specifically indicated that Linzy's impairments are not likely to produce "good days" and "bad days," and he therefore declined to estimate how many days per month she was likely to be absent from work. *Id.*

Accordingly, based on the ALJ's discussion of Linzy's headaches and the medical evidence of record, the Court finds that the ALJ properly considered her headaches in the RFC assessment and that the RFC assessment is supported by substantial evidence.

### 3. Credibility

Finally, Linzy argues that the credibility assessment is not supported by substantial evidence because the ALJ improperly considered her failure to comply with treatment. ECF No. 11-1, at 16-19. Specifically, Linzy asserts that the ALJ should have considered her low IQ when evaluating why she did not follow through with recommended treatment. *Id.*

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Id.* (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ must consider all of the claimant's statements about his or her symptoms and how those symptoms affect his or her daily activities and ability to work. 20 C.F.R. §§ 404.1529, 416.929. However, the claimant's statements about his or her symptoms will not alone establish that he or she is disabled. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and their effect on his or her ability to work.

First, the ALJ must consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit his or her work capacity. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the claimant's allegations considering several factors, including treatment received to relieve symptoms. 20 C.F.R. §§ 416.1529(c)(3)(v), 416.929(c)(3)(v). "However, the [ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996).[4] Moreover, the ALJ should consider whether the claimant's cognitive deficits or lack of insight into his or her own limitations contributed to the failure to continue recommended treatment. *See Kennerson v. Astrue*, No. 10-CV-6591 MAT, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012) ("In addition, the ALJ failed to take into account Plaintiff's borderline intellectual functioning and lack of insight into her own limitations, which were likely contributors in her failure to continue mental health treatment.").

Here, the ALJ discounted Linzy's credibility in part because she was frequently noncompliant with recommended treatment. The ALJ noted, for example, that Linzy "stopped

---

[4] The Court notes that S.S.R. 96-7p was recently superceded by S.S.R. 16-3p, which became effective on March 28, 2016. S.S.R. 96-7p, however, remains the relevant guidance for the purposes of Linzy's claim, which was filed on January 31, 2013. *See Bailey v. Colvin*, No. 1:15-CV-00991 (MAT), 2017 WL 149793, at *5 n.2 (Jan. 14, 2017).

medication on her own," "did not comply with monthly blood work," was "non-compliant with medication," and did not follow-up for sleep apnea treatment. Tr. 19 (citing Tr. 300, 377, 662, 809). The ALJ also pointed out that although Linzy "was repeatedly recommended to follow-up with primary upon discharge from the emergency room, she generally did not do so" and that she failed to attend three scheduled consultative examinations. Tr. 20 (citing Tr. 63).

Although Linzy asserts that the ALJ did not consider relevant factors that that might explain her irregular medical visits and failure to seek treatment, the ALJ specifically stated that "[t]here is no evidence that [Linzy]'s mental health or physical health prevented follow-up." Tr. 20. In further support of this conclusion, the ALJ noted that a state agency psychological consultant opined that there was insufficient evidence to establish that Linzy had any mental impairment.[5] Tr. 21 (citing Tr. 59-82). Moreover, although Linzy argues that the ALJ should have considered whether her low IQ affected her ability to take medications and follow recommended treatment, the ALJ specifically discussed her IQ in the RFC analysis. Tr. 20-21. The ALJ noted that she "considered [Linzy]'s IQ test results and history of special education" and that the RFC accordingly limits her to "unskilled work involving simple, routine, repetitive type tasks." Tr. 21. The ALJ also reasoned that "[t]hough the record indicated special education and a full scale IQ of 80, [Linzy] has a history of semi-skilled work, to her credit." Tr. 20. She noted that "[t]here is no documentation indicating that [Linzy's] learning disability would prevent work. She was trained as a [Certified Nursing Assistant] and worked before she quit in 2012. She also reported rather normal daily activities." *Id.* (citing Tr. 207-17).

As mentioned above, the ALJ was entitled to consider treatment Linzy received (or did not receive) to relieve her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). In

---

[5] The ALJ did not find that Linzy had any severe mental impairment at step two of the disability analysis and Linzy does not argue that she has any functional limitations due to mental impairments.

14

doing so, it is clear that the ALJ considered whether additional factors, such as Linzy's mental and physical limitations or her low IQ, interfered with her ability to comply with recommended treatment. Accordingly, for these reasons, the Court finds that the ALJ did not err in finding that Linzy's treatment history weakened her credibility.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 24, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court